# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALLISTER, NEBEKER & McCULLOUGH, PC, W. WALDAN LLOYD, and J. HOYT STEPHENSON,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00677-RJS-BCW<br><br>Judge Robert J. Shelby |
| CALLISTER, NEBEKER & McCULLOUGH, PC, and W. WALDAN LLOYD,<br><br>　　　　Third-Party Plaintiffs,<br><br>v.<br><br>OLD REPUBLIC INSURANCE COMPANY,<br><br>　　　　Third-Party Defendant. | |

　　　　This case stems from a legal malpractice suit and the ensuing dispute to determine whether either of two insurance companies, or both, has a duty to defend against the suit. The law firm Callister, Nebeker & McCullough and its employee W. Waldan Lloyd (collectively, Callister); its insurer at the time the legal malpractice suit was filed, Old Republic Insurance Company; and its former insurer, Ironshore Specialty Insurance Company, have all filed Motions for Summary Judgment. For the reasons stated below, the court grants Ironshore's Motion for

Summary Judgment,[1] grants Old Republic's Motion for Summary Judgment,[2] and denies both Callister's Motion for Summary Judgment against Old Republic[3] and its Motion for Partial Summary Judgment against Ironshore.[4]

## BACKGROUND

This case is about whether either of two insurance carriers has a duty to defend Callister against a malpractice suit. Callister had coverage through Ironshore from 2009 to 2013, and coverage through Old Republic starting in 2013. The alleged malpractice occurred while Callister was insured by Ironshore, but Ironshore denies it has a duty to defend on the ground that it did not receive proper notice of the claim. When the underlying malpractice suit was later filed, Callister was insured by Old Republic, which also denied coverage.

### I. Callister Performs Work on Matters in Dispute

In 2003, Defendant Hoyt Stephenson hired Callister to form a plan to restructure his business and gain tax benefits. As part of this plan, Callister created National Financial Systems Management (NFSM) and an employee stock-ownership plan. In 2010, NFSM asked Lloyd, an attorney at Callister, to analyze potential risks presented by Stephenson's actions regarding NFSM. In a letter to NFSM, Lloyd stated that Stephenson had engaged in prohibited ERISA transactions.

The employee stock-ownership plan later sued Stephenson based on allegations Lloyd outlined in his letter to NFSM. During the litigation against Stephenson, an attorney for NFSM and the employee stock-ownership plan sent a letter to Callister stating that Stephenson

---

[1] Dkt. 85.
[2] Dkt. 86.
[3] Dkt. 87.
[4] Dkt. 88.

"remembers receiving advice from your firm" that Stephenson should take actions that were prohibited under ERISA. The attorney noted that if Stephenson's claims about erroneous legal advice were true, Callister probably needed to notify its malpractice carrier.[5]

## II. Ironshore's Policy

During the time of the alleged malpractice, Callister had professional liability insurance through Ironshore. The front page of Ironshore's policy states that it is a claims-made policy,[6] meaning only claims both made and reported during the policy period are eligible for coverage.

Section VIII of the policy sets forth the notice requirements for claims and for "any circumstances that may reasonably be expected to give rise to a Claim."[7] The policy states that if the insured gives written notice to Ironshore of the circumstances, anticipated allegations, and reasons for anticipating a claim "with full particulars as to dates, persons and entities involved," then Ironshore will consider a subsequent claim arising out of those circumstances to be made at the time the insured gave notice of the circumstances.[8]

Ironshore's policy also contains an "innocent insured" waiver,[9] designed to protect attorneys who are in default of the notice provision "solely because of the default or concealment of such default by one or more Insured responsible for the loss or damages otherwise insured."[10]

A month after receiving the letter about Stephenson's potential malpractice claims, Callister prepared an annual renewal application for insurance from Ironshore.[11] The application asked whether any attorneys in the firm were aware of "any legal work or incidents that might

---

[5] Dkt. 92, Ex. 2.
[6] Dkt. 85, Ex. 3 at 3.
[7] *Id.* at 11.
[8] *Id.*
[9] *Id.* at 9–10.
[10] *Id.* at 9.
[11] Dkt. 85, Ex. 11.

3

reasonably be expected to lead to a claim or suit against them."[12] In response, Callister listed "Issue/Claimant" as "National Financial Systems/Hoyt Stephensen"[13] and designated the matter "Active."[14] Under the "Summary" of the matter, Callister wrote that Ironshore "has not yet been notified as no claim has been asserted against the Firm. Involves alleged malpractice for preparation of loan documents to facilitate a prohibited transaction under ERISA. Notice to carrier in process."[15]

In the next year's application to Ironshore, Callister again listed "National Financial Systems/Hoyt Stephensen" as the "Issue/Claimant" for an "Active" matter.[16] The summary stated that Ironshore had not been notified, and it described the matter as involving an "[a]lleged error in documenting ERISA-related transaction."[17] Apart from its renewal applications, Callister did not disclose the potential claim to Ironshore at any time while Callister was insured by Ironshore.

## III. Old Republic's Policy

In October 2013, Callister switched its professional liability insurer to Old Republic. The first page of the Old Republic application states that it is a claims-made policy.[18]

Old Republic's professional liability insurance application contains a list of questions for the applicant. Question 30(a) asks whether the applicant knows "of any acts, errors, omissions or circumstances that could reasonably give rise to a professional liability claim against the

---

[12] *Id.* at 10.

[13] For ease of reference and consistency of spelling, the court will refer to this as the "NFSM/Stephenson matter."

[14] Dkt. 85, Ex. 14.

[15] *Id.* (underline in original).

[16] Dkt. 85, Ex. 15.

[17] *Id.*

[18] Dkt. 86, Ex. 1 at 2.

4

applicant."[19] When completing its application, Callister answered this question "Yes" and referred to an attached explanation that listed the "Issue/Claimant" as "National Finance Systems/Hoyt Stephensen" and noted it was "Active."[20] Callister wrote in the summary that Ironshore (its carrier at the time) "has not been notified as no claim has been asserted against the Firm" and that the matter involved an "[a]lleged error in documenting ERISA-related transaction."[21] Question 30(b) asks whether the above-listed matter had been reported to the applicant's current or former insurer.[22] Callister answered "Yes" and stated, "Concurrently, or immediately succeeding this application, written notice will be given to the current insurer."[23] Beneath Question 30(b) is a prominent disclaimer that reads, in bold, "NOTICE: THE POLICY BEING APPLIED FOR WILL NOT PROVIDE COVERAGE FOR ANY CLAIM ARISING OUT OF THE MATTERS REQUIRED TO BE LISTED IN 30(a) AND 30(b) ABOVE."[24]

## IV. The Stephenson Malpractice Suit

Stephenson filed in Utah state court the underlying malpractice suit at issue in February 2014, alleging errors in Callister's work on NFSM. In March 2014, Callister sent written notice of the suit to Old Republic, which responded that it would not cover the suit. Callister then notified Ironshore of the suit in April 2015, approximately 14 months after it was filed.

Ironshore responded to Callister's notice with this action. In its Complaint, Ironshore seeks a declaratory judgment that it did not owe a duty to defend or indemnify Callister in the Stephenson malpractice suit. Callister then filed a third-party Complaint for declaratory

---

[19] *Id.* at 43.

[20] *Id.* at 45.

[21] *Id.* (underline in original).

[22] *Id.* at 43.

[23] *Id.*

[24] *Id.*

judgment against Old Republic, which counterclaimed against Callister. All three parties filed Motions for Summary Judgment based on the requests for declaratory judgment.[25]

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."[26] A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27] In reviewing a motion for summary judgment, the court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[28] "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[29]

**ANALYSIS**

Callister has filed Motions for Summary Judgment against both Ironshore and Old Republic, arguing that each has a duty to defend against the malpractice suit. Ironshore argues that it does not have a duty to defend because Callister did not provide proper notice of the claim, and Old Republic contends it does not have a duty because its application excluded claims arising from facts that Callister already knew might give rise to a claim at the time Callister applied for coverage with Old Republic.

---

[25] Old Republic also moved the court for summary judgment on Ironshore's claim that it could seek equitable subrogation and contribution for defense costs if the court concluded Old Republic had a duty to defend Callister. Because the court concludes that Old Republic does not have a duty to defend, it is not necessary to reach this issue.
[26] Fed. R. Civ. P. 56(a).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[28] *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000).
[29] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

Utah applies the "eight-corners rule," in which an insurer's duty to defend is determined "by comparing the allegations within the four corners of the complaint to the language contained in the four corners of the insurance policy."[30] The duty to defend arises "when the insurer ascertains facts giving rise to potential liability under the insurance policy."[31] But where "the allegations, if proved, show 'there is no potential liability [under the policy], there is no duty to defend.'"[32]

The court will first address Ironshore's policy before turning to Old Republic's policy.

## I. Ironshore's Policy

The dispute between Callister and Ironshore centers around two policy provisions: Section VIII, which covers notice of claims and potential claims, and Section IV, which provides coverage for an innocent insured. Ironshore argues that neither Callister nor Lloyd provided proper notice of circumstances that could give rise to the malpractice suit. Callister argues that there is no genuine dispute of material fact that its notification of the NFSM/Stephenson matter in its renewal applications was sufficient and, in the alternative, that Lloyd should still be covered as an innocent insured.

### A. Callister's Renewal Applications Did Not Comply with Ironshore's Notice Provision

The primary dispute between Callister and Ironshore concerns whether Callister gave proper notice of the potential claim. Ironshore argues that Callister was required to strictly comply with the notice provision in the policy, which Callister does not dispute that it failed to do. Callister counters that the requirement to strictly comply applies only if Ironshore met Utah's statutory requirements for a claims-made policy. Callister contends that Ironshore's

---

[30] *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014).
[31] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997).
[32] *Basic Research, LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 7, 297 P.3d 578 (alteration in original).

7

policy did not comply with the statutory requirements and that therefore substantial compliance through Callister's disclosures in its renewal applications was sufficient to give notice of a potential claim.

A claims-made policy covers only claims that are made and reported to an insurer during the policy period.[33] This limitation is "crucial" because allowing notice that does not comply with the policy's requirements creates "an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy."[34] Utah's coverage restriction statute states that a policy may benefit from this limitation only if it contains on the cover page "a conspicuous statement that the coverage of the policy is limited in that way."[35] However, the policy need not "list the requirement of giving notice as an express element of coverage."[36] Rather, it is sufficient if the policy contains a conspicuous statement on the cover page and, when "[r]ead as a whole, the policy limits its coverage to those claims, wrongful acts, or circumstances that might give rise to a claim and that are reported to [the insurer] during the coverage period."[37]

Ironshore argues it need not comply with the coverage restriction statute, and, alternatively, it satisfied the statute's requirements for claims-made policies. First, Ironshore argues that its status as a surplus-lines insurer means the coverage restriction statute does not apply. Under Utah law, such insurers need not comply with certain regulations, including the coverage restriction statute.[38] For this reason, Ironshore argues its claims-made policy need not

---

[33] *LaForge v. Am. Cas. Co.*, 37 F.3d 580, 583 (10th Cir. 1994).

[34] *Id.* (citation omitted).

[35] Utah Code § 31A-22-204.

[36] *Westport Ins. v. Ray Quinney & Nebeker*, No. 2:07-cv-236, 2009 WL 2474005, at *8 (D. Utah Aug. 7, 2009).

[37] *Id.* at *9.

[38] Utah Code § 31A-21-101.

8

satisfy the requirement that the cover page contain "a conspicuous statement that the coverage of the policy is limited in that way."[39] Ironshore raised this argument in its reply brief, in response to Callister's argument that Ironshore's policy failed to comply with the coverage restriction statute. Although the issue of whether the statute applies is a pertinent one, Callister did not counter Ironshore's arguments legally or factually in a surreply or otherwise. At oral argument, Callister cited no authority or facts contrary to Ironshore's assertions. Thus, the court concludes there exists no genuine dispute of material fact concerning Ironshore's status as a surplus-lines insurer that need not write policies satisfying the coverage restriction statute.

But even if Ironshore were required to comply with the statute, the court concludes that it did. Ironshore's claims-made policy notice is conspicuous because Ironshore states in bold text on the policy cover page that it is "a Claims Made and Reported Policy." Additionally, the policy states in Section I.A. that it covers claims "first made against the Insured during the Policy Period and reported to the Insurer during the Policy Period."[40] The cover page statement, combined with the description of coverage, satisfies the notice requirements for a claims-made policy under Utah law.

As the insured of a claims-made policy, Callister needed to strictly comply with the notice provision in the policy. Because it notified Ironshore of a potential claim only in renewal applications, and not in a formal notice of a potential claim, Callister has not strictly complied. In a similar case, the Tenth Circuit, in a persuasive application of Kansas law, held that a renewal application did not satisfy the notice requirements in part "because of the context in which the information was provided."[41] A renewal application, the court noted, is "designed to seek a

---

[39] *Id.* § 31A-22-204.

[40] Dkt. 85, Ex. 3 at 5.

[41] *LaForge*, 37 F.3d at 584.

9

continuation of coverage from the insurer's underwriters," whereas a formal notice is "a document designed to seek recovery under the policy in effect at the time through [the insurer's] claims mechanism."[42] The same rationale applies in this case, where the lack of formal notice means Callister has not strictly complied with Ironshore's notice provision.

Additionally, even if only substantial compliance were required, Callister's disclosures in its renewal applications failed to substantially comply with the notice requirements. Ironshore's policy requires notice that includes the circumstances, the anticipated allegations, and the reasons for anticipating a claim "with full particulars as to dates, persons and entities involved."[43] Callister's renewal application did not contain this information. Notably, even the renewal applications themselves state that notice of the potential NFSM/Stephenson claim had not been given to Ironshore. The court finds that Callister did not comply with Ironshore's notice provision for the malpractice suit. As a result, Ironshore has no duty to defend.

## B. Lloyd Is Not Covered Under the "Innocent Insured" Provision

Callister also argues that even if the firm is denied coverage under the notice of claim provision, Lloyd remains covered under the "innocent insured" provision of Ironshore's policy because he was not responsible for the default in providing notice.

The innocent insured provision functions as a waiver of the exclusion stemming from a default in notice. After an insurer meets its burden of proof that an exclusion applies, the burden then shifts to the insured to prove an exception to the exclusion applies.[44] Thus, it is Lloyd's burden to prove that the innocent insured provision covers him.

---

[42] *Id.*

[43] Dkt. 85, Ex. 3 at 11.

[44] *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 868 F. Supp. 1278, 1313 (D. Utah 1994), *aff'd*, 52 F.3d 1522 (10th Cir. 1995) (noting that Utah law is unclear about the shift in burdens, but applying rule that insured bears the burden of proving application of an exception to an exclusion in an insurance policy).

The innocent insured provision in the Ironshore policy states that coverage may still apply to an insured who is in default "solely because of the default or concealment of such default by one or more Insured responsible for the loss or damages otherwise insured." Lloyd argues he is in default only because of the default of the firm's president, who was responsible for giving notice to Ironshore of any claims. However, the provision applies not to default by members of the firm responsible for giving notice, but to fellow insureds who are "responsible for the loss or damage otherwise insured." In this case, the loss or damage refers to the potential malpractice claim. Lloyd submits no facts showing the president of the firm is responsible for that claim. Lloyd has not met his burden of proving the innocent insured provision applies to him.

The court concludes that Ironshore did not have a duty to defend and is entitled to judgment as a matter of law. Ironshore's Motion for Summary Judgment is granted.

## II.    Old Republic's Policy

Old Republic argues in its Motion for Summary Judgment that its duty to defend does not include malpractice claims arising from facts that Callister listed in its insurance application that could reasonably give rise to a claim.

### A.  Old Republic's Policy Excludes the Stephenson Malpractice Suit

Callister argues the provision in Old Republic's application[45] concerning existing knowledge of potential claims is ambiguous and therefore the policy must be "construed in favor of Callister for coverage."[46] Alternatively, Callister argues there is a genuine dispute of material fact about whether the Stephenson malpractice suit is excluded under Paragraph 30 of the

---

[45] Old Republic's application states that it "will be attached to and made a part of the policy." Dkt. 86, Ex. 1, at 5. The parties agree the policy that issued includes the application.

[46] Dkt. 87 at 2.

11

application, which asks whether any attorney at the firm knew at the time of the application about "any acts, errors, omissions or circumstances that could reasonably give rise to a professional liability claim against the applicant."[47]

"If a policy is ambiguous, doubt is resolved against the insurer."[48] But policy terms are not ambiguous "simply because one party seeks to endow them with a different interpretation according to his or her own interests."[49] Rather, an insurance policy is ambiguous "if it is unclear, omits terms, or is capable of two or more plausible meanings."[50] Any exclusions from coverage must be in "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."[51]

Callister contends Paragraph 30 of the Old Republic application creates ambiguity in two ways. First, Callister argues the scope of coverage is ambiguous because the policy's coverage provisions conflict with Paragraph 30's exclusion. Second, Callister argues ambiguity arises from the disclaimer's language about excluding any claim listed in response to Paragraph 30.

The court finds that Old Republic's policy is not ambiguous. First, the mere existence of an exclusion does not mean it "conflicts" with the coverage provisions, as "this logic would prevent application of any exclusion since exclusions are necessarily inconsistent with

---

[47] Callister also argues that ambiguity stems from a separate provision in the policy regarding claims arising from facts that Callister "knew or reasonably could foresee" might be the basis for a claim. Dkt. 87 at 20. Old Republic argues that a genuine dispute of material fact exists as to whether this provision excludes coverage. Dkt. 91 at 46. Regardless, the court finds that Callister's claim was excluded under Old Republic's application. Thus, the court need not address whether the "knew or reasonably could foresee" provision also excluded coverage.

[48] *Alf v. State Farm First & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[49] *Id.* at 1274–75.

[50] *S.W. Energy Corp. v. Cont'l Ins. Co.*, 1999 UT 23, ¶ 14, 974 P.2d 1239.

[51] *Alf*, 850 P.2d at 1275 (citation omitted).

coverage."[52] Second, there is no ambiguity in the disclaimer after Paragraph 30, which reads, "NOTICE: THE POLICY BEING APPLIED FOR WILL NOT PROVIDE COVERAGE FOR ANY CLAIM ARISING OUT OF THE MATTERS REQUIRED TO BE LISTED IN 30(a) AND 30(b) ABOVE."[53] Callister argues that the disclaimer functions not as an exclusion but as a "warning statement" that the policy, "if issued, will contain a prior knowledge exclusion or similar limitation of coverage which will apply to claims required to be listed in Questions 30(a) and 30(b)."[54] However, this difference in language does not render the provision or its effect ambiguous. Callister points to no part of the disclaimer that is unclear or omits terms. Additionally, Callister's mere rewording of the disclaimer into a "warning statement" does not mean it is capable of two or more plausible meanings. The court finds that Paragraph 30 of the application and the disclaimer that follows are not ambiguous.

Callister also argues that even if the disclaimer is unambiguous, there is a genuine dispute of material fact about whether it excludes the Stephenson malpractice suit. During briefing and at oral argument, the parties disputed the meaning of several terms within the disclaimer that would alter the scope of the exclusion.

Callister argues that the malpractice suit is not properly deemed "arising out of" the matters listed in response to Question 30(a) because those claims are "wholly different" from NFSM's claims.[55] At oral argument, the parties also debated the meaning of "matters" and "required to be listed."

---

[52] *Id.*
[53] Dkt. 86, Ex. 1 at 43.
[54] Dkt. 92 at 5.
[55] *Id.* at 7.

Under Utah law, "[a]s used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive."[56] The phrase is "commonly understood to mean originating from, growing out of, or flowing from," and it requires "only that there be some causal relationship."[57] As to the term "matters," the court need look no further than Question 30(b), which defines "matters" in reference to the above-listed acts, errors, omissions, or circumstances. The court also concludes that "required to be listed" means simply that Question 30(a) called for an answer and the applicant provided one.

Under this standard, Stephenson's suit against Callister arises out of the matter required to be listed in response to Question 30(a). Callister listed the "[a]lleged error in documenting ERISA-related transaction" in response to Question 30(a)'s prompt about "any acts, errors, omissions or circumstances that could reasonably give rise to a professional liability claim against the applicant." Even construing the facts in the light most favorable to Callister, there is no genuine dispute as to whether the allegations in the malpractice suit originate, grow out of, or flow from the ERISA-related error that Callister referenced in its answer. The complaint in the malpractice suit makes this clear, as Stephenson alleges that Callister erred in providing legal services regarding the business plan for NFSM and the employee stock-ownership plan. Old Republic's policy thus excludes the malpractice suit, and Old Republic does not have a duty to defend. Old Republic's Motion for Summary Judgment is granted.

## CONCLUSION

For the reasons stated above, Ironshore's Motion for Summary Judgment is GRANTED,[58] Old Republic's Motion for Summary Judgment is GRANTED,[59] and Callister's

---

[56] *Meadow Valley Contractors, Inc. v. Transcon. Ins. Co.*, 2001 UT App 190, ¶ 14, 27 P.3d 594 (citation omitted).

[57] *Id.* (citation omitted).

[58] Dkt. 85.

Motion for Summary Judgment against Old Republic[60] and Motion for Partial Summary Judgment against Ironshore[61] are DENIED. The Clerk of Court is directed to close the case.

**SO ORDERED** this 21st day of December, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[59] Dkt. 86.

[60] Dkt. 87.

[61] Dkt. 88.